UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PNC BANK, NATIONAL, )
ASSOCIATION, )
 )
      Plaintiff, )
 ) 10 C 3785
  v. )
 ) Judge George M. Marovich
IVAN DJURIN, )
 )
      Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff PNC Bank, National Association ("PNC") filed suit against defendant Ivan Djurin ("Djurin") to collect on three guaranty agreements signed by Djurin. PNC now moves for judgment on the pleadings with respect to the merits of Counts I, II and III. (PNC does not move for judgment as to damages.) For the reasons set forth below, the Court grants the motion.

**I.    Background**

The following summary is based upon: (1) the facts alleged by plaintiff and admitted by defendant in the pleadings; and (2) the attachments to the pleadings.

PNC made a series of three loans to entities related to Djurin. With respect to each loan, Djurin signed a guaranty of payment. The relevant details of those guaranties are set forth below.

**Colts Run Guaranty**

In or about December 2007, Colts Run LLC ("Colts Run") executed a Fourth Amended and Restated Adjustable Rate Note (the "Colts Run Loan") in an amount greater than $16,000,000.00. With respect to the Colts Run Loan, Djurin executed a Guaranty of Payment (the "Colts Run Guaranty").

The Colts Run Guaranty states, in relevant part:

**ARTICLE 2**
**GUARANTY**

2.1 Except as set forth in Paragraph 7, Guarantor unconditionally, absolutely, continuously and irrevocably guaranties to Lender, Borrower's prompt payment, in full, when due or declared due, of Borrower's Liabilities (including interest thereon) and Borrower's prompt performance of Borrower's Obligations (collectively 'Guarantor's Liabilities'). . . .

2.2 As a condition to payment or performance of Guarantor's Liabilities, Lender is not required to (a) prosecute collection, or seek to enforce or resort to any remedies against Borrower or any other party liable to Lender on account of Borrower's Liabilities, Borrower's Obligations or any guaranty thereof, or (b) seek to enforce or resort to any remedies with respect to any security interests, liens or encumbrances granted to Lender by Borrower or any other party liable to Lender on account of Borrower's Liabilities, Borrower's Obligations, or any guaranty thereof.

\* \* \*

**ARTICLE 4**
**WAIVERS**

\* \* \*

4.2 Guarantor waives all defenses, counterclaims, and offsets of any kind or nature in connection with the validity and/or enforceability of the Loan or this Guaranty, arising directly or indirectly from the perfection, sufficiency, validity and/or enforceability of any lien, agreement, instrument or document executed and delivered, by Borrower to Lender, or acquired by Lender from Borrower.

\* \* \*

**ARTICLE 6**
**GENERAL**

\* \* \*

6.2 . . . This Guaranty shall be governed and controlled as to interpretation, enforcement, validity, construction, effect and in all other respects by the laws, statutes and decisions of the State of Illinois.

\* \* \*

**ARTICLE 7**
**RECOURSE TO GUARANTOR**

\* \* \*

Under no circumstances shall Guarantor's liability hereunder be reduced by, from or as a result of any payment to or amount realized by Lender from any rents, deposits, insurance proceeds, condemnation awards, proceeds from

> bankruptcy sale, foreclosure or any conveyance in lieu of foreclosure or from any other profits, avails, revenues or proceeds derived from the Property, and only payments made to Lender by Guarantor from or with personal funds not derived from the Property after demand therefor by Lender shall be applied against such liability.

(Colts Run Guaranty at 4, 6, 10, 13-14).

In or about April of 2010, Colts Run filed a Chapter 11 bankruptcy petition. The filing of that petition constituted an "Event of Default" under the Colts Run Loan.

### Mt. Zion Guaranty

In January 2008, PNC entered a loan agreement (the "Mt. Zion Loan") with Mt. Zion Limited Partnership ("Mt. Zion"). Pursuant to that agreement, PNC loaned Mt. Zion $25,250,000.00. Djurin executed a Guaranty of Payment (the "Mt. Zion Guaranty") for the Mt. Zion Loan.

> The Mt. Zion Guaranty states, in relevant part:
>
> 1. **Guaranty of Payment**. Subject to Section 5, Guarantor hereby unconditionally and irrevocably guarantees to Lender (I) the punctual payment and performance when due, whether at stated maturity or by acceleration or otherwise, of the outstanding indebtedness and other obligations of Borrower to Lender evidenced by the Note and any other amounts that may become owing by Borrower under the Loan Documents . . . This Guaranty is a present and continuing guaranty of payment and not of collectibility, and Lender shall not be required to prosecute collection, enforcement or other remedies against Borrower or any other guarantor of the Payment Obligations, or to enforce or resort to any collateral for the repayment of the Payment Obligations or other rights or remedies pertaining thereto, before calling on Guarantor for payment. If for any reason Borrower shall fail or be unable to pay, punctually and fully, any of the Payment Obligations, Guarantor shall pay such obligations to Lender in full promptly following demand.
>
> \* \* \*
>
> 4. **Continuing Guaranty.** Guarantor agrees that performance of Guarantor's Obligations by Guarantor shall be a primary obligation, shall not be subject to any counterclaim, set-off, abatement, deferment or defense based upon any claim that Guarantor may have against Lender, Borrower, any other guarantor

> of the Loan or any other person or entity, and shall remain in full force and effect without regard to, and shall not be released, discharged or affected in any way by any circumstance or condition (whether or not Guarantor shall have any knowledge thereof) . . .
>
> \* \* \*
>
> 5. **Recourse to Guarantor**
>
> \* \* \*
>
> Under no circumstances shall Guarantor's liability hereunder be reduced by, from or as a result of any payment to or amount realized by Lender from any rents, deposits, insurance proceeds, condemnation awards, proceeds from bankruptcy sale, foreclosure or any conveyance in lieu of foreclosure or from any other profits, avails, revenues or proceeds derived from the Premises, and only payment made to Lender by Guarantor from or with personal funds not derived from the Premises after demand therefor by Lender shall be applied against such liability.
>
> 17. **Applicable law.** This Guaranty is governed as to validity, interpretation, effect and in all other respects by laws and decisions of the State of Illinois.

(Mt. Zion Guaranty at 1-2, 5-6, 8).

In or about April 2010, Mt. Zion filed a Chapter 11 bankruptcy petition. The filing of the petition constituted an "Event of Default" under the Mt. Zion Loan.

**Mezzanine Guaranty**

In or about January 2008, Mt. Zion also executed a mezzanine loan agreement (the "Mezzanine Loan"). Djurin executed a Guaranty of Payment (the "Mezzanine Guaranty") with respect to the Mezzanine Loan. When Mt. Zion filed its bankruptcy petition, that constituted an "Event of Default" under the Mezzanine Loan.

The Mezzanine Guaranty states, in relevant part:

<u>Section 2</u>     <u>Guaranty Unconditional</u>

> Guarantor, absolutely and unconditionally, guarantees the prompt payment and performance when due of the Guaranteed Obligations. Guarantor undertakes this continuing, absolute, and unconditional guaranty of the aforementioned payment and performance by the Borrower notwithstanding that any portion of

-4-

the Guaranteed Obligations may be void, voidable or unenforceable as between the Borrower and the Bank.

Section 3    Guaranty of Payment

This instrument is a guaranty of payment and performance when due of the Guaranteed Obligations, and not a guaranty of collection. Upon the occurrence of any Event of Default, the Bank may proceed against the undersigned Guarantor to collect the Guaranteed Obligations, with or without proceeding against the Borrower, any co-maker or co-surety or co-guarantor, any indorser or any other collateral which may then be held as security for the Guaranteed Obligations.

* * *

Section 5    Obligations Unaffected

. . .  Guarantor waives all defenses based on suretyship or impairment of collateral, presentment, protect, demand for payment, any right of set-off, notice of dishonor or default, notice of acceptance of this Guaranty, notice of the incurring of any of the Guaranteed Obligations and notice of any other kind in connection with the Guaranteed Obligations or this Guaranty.

Section 12    Miscellaneous Provisions

* * *

(g)    This Guaranty will be governed by the laws of the State of Ohio.

(Mezzanine Guaranty at 4, 8).

**Demands for Payment**

On June 11, 2010, PNC demanded immediate payment under the Mt. Zion Guaranty, the Mezzanine Guaranty and the Colts Run Guaranty. Defendant made no payment under any of the Guaranties.

**II.    Standard on a Motion for Judgment on the Pleadings**

Under Rule 12(c) of the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings at any time after the pleadings have closed. The pleadings include the complaint, answer and any documents attached thereto. Fed.R.Civ.P. 10(c).

A plaintiff's "motion for judgment on the pleadings may be granted only if the moving party clearly establishes that no material issue of fact remains to be resolved and that he or she is entitled to judgment as a matter of law." *National Fidelity Life Ins. Co.*, 811 F.2d 357, 358 (7th Cir. 1987); *Cambridge Healthcare LLC v. Infinity Home Services*, Case No. 10 C 7284, 2011 WL 2294196 at *2 (N.D. Ill. June 9, 2011).

### III. Discussion

Under Illinois law, "a guaranty is a legally enforceable contract that must be construed according to its terms, so long as they are clear and unambiguous." *Federal Dep. Ins. Corp. v. Rayman*, 117 F.3d 994, 998 (7th Cir. 1997). Likewise, under Ohio law, a "guaranty agreement is interpreted as any other contract," and if the "guaranty's terms are clear and unambiguous, a court may not construe it to have another meaning." *O'Brien v. Ravenswood Apts. Ltd.*, 862 N.E.2d 549, 554 (Oh.App.Ct. First Dist. 2006). Waivers of defenses, within a guaranty, are enforceable under Illinois and Ohio law. *See Chrysler Credit Corp. v. Marino*, 63 F.3d 574, 577 (7th Cir. 1995) (waivers enforceable under Illinois law); *Buckeye Fed. Sav. & Loan Assoc. v. Guirlinger*, 581 N.E.2d 1352, 1354 (Ohio 1991).

#### A. Count I: Mt. Zion Guaranty

In Count I, PNC asserts a claim for breach of the Mt. Zion Guaranty, which is governed by Illinois law. Defendant admits that he executed the Mt. Zion Guaranty. The Mt. Zion Guaranty states, among other things:

> Guarantor hereby unconditionally and irrevocably guarantees to Lender (I) the punctual payment and performance when due, whether at stated maturity or by acceleration or otherwise, of the outstanding indebtedness and other obligations of Borrower to Lender evidenced by the Note and any other amounts that may

become owing by Borrower under the Loan Documents . . .     This Guaranty is a present and continuing guaranty of payment and not of collectibility, and Lender shall not be required to prosecute collection, enforcement or other remedies against Borrower or any other guarantor of the Payment Obligations, or to enforce or resort to any collateral for the repayment of the Payment Obligations or other rights or remedies pertaining thereto, before calling on Guarantor for payment.  If for any reason Borrower shall fail or be unable to pay, punctually and fully, any of the Payment Obligations, Guarantor shall pay such obligations to Lender in full promptly following demand.

(Mt. Zion Guaranty at 1-2).  Defendant admits that when Mt. Zion filed a bankruptcy petition, that constituted a default with respect to the Mt. Zion Loan.  Defendant admits that PNC made a demand for payment and that he did not pay.  Accordingly, plaintiff has established that Djurin breached the Mt. Zion Guaranty.

With respect to Count I, Djurin asserts two affirmative defenses, and he bears the burden of proof with respect to them.  The first affirmative defense Djurin asserted when he answered the complaint was that the amount due under the Mt. Zion Guaranty should be reduced by any amounts paid on the Mt. Zion Loan as part of the bankruptcy proceeding.  In moving for judgment on the pleadings, plaintiff argued that the plain language of the Guaranty is contrary to the first affirmative defense.  Specifically, the Mt. Zion Guaranty states:

> Under no circumstances shall Guarantor's liability hereunder be reduced by, from or as a result of any payment to or amount realized by Lender from any rents, deposits, insurance proceeds, condemnation awards, proceeds from bankruptcy sale, foreclosure or any conveyance in lieu of foreclosure or from any other profits, avails, revenues or proceeds derived from the Premises, and *only payment made to Lender by Guarantor from or with personal funds not derived from the Premises after demand therefor by Lender shall be applied against such liability*.

(Mt. Zion Guaranty Section 5) (emphasis added).  Defendant did not respond to this argument or make any mention of affirmative defense number one.  In any case, the Court agrees with plaintiff that the affirmative defense cannot stand in the face of the plain language of the Mt.

Zion Guaranty, which states that only payment by the Guarantor from personal funds counts toward the liability.

The only argument Djurin makes in response to plaintiff's motion for judgment on the pleadings concerns his second affirmative defense. In that defense, Djurin asserts that plaintiff cannot enforce a guaranty without establishing that it is a person entitled to enforce the underlying note. Defendant bases this argument on Illinois and Ohio statutory language, which is based on § 3-301 of the Uniform Commercial Code. The Illinois statute states, in relevant part, "'Person entitled to enforce' an *instrument* means (I) the holder of the instrument . . ." 810 ILCS § 5/3-301 (emphasis added). The Ohio statute states, in relevant part, "'Person entitled to enforce' an *instrument* means any of the following persons: (1) The holder of the instrument . . ." Ohio Rev. Code § 1303.31 (emphasis added).

The Court rejects Djurin's argument. The problem with the argument is that the statutes he relies on, by their terms, apply *only* to instruments. Under these statutes (and the UCC, itself), "instruments" are defined as "negotiable instruments." *UCC* § 3-104(b) ("'Instrument' means negotiable instrument."); 810 ILCS 5/3-104(b) ("'Instrument' means negotiable instrument."); Ohio Rev. Code 1303.03(B) ("'Instrument' means negotiable instrument.") A guaranty, however, is not a negotiable instrument under these statutes. *Rayman*, 117 F.3d at 999 ("It is well established in Illinois that . . . the guaranty is not a negotiable instrument."); *Buckeye Fed. Sav. & Loan Assoc. v. Guirlinger*, 581 N.E.2d 1352, 1354 (Ohio 1991) ("the promissory notes are negotiable instruments under R.C. 1303.03(A), but the separate guarantee agreements are not."). Accordingly, Djurin's statutory argument fails, and he has provided no other legal support for his argument that one must hold the underlying note to enforce a guaranty. Plaintiff's second affirmative defense fails as a matter of law.

For all of these reasons, the Court concludes that plaintiff has established that it is entitled to judgment as a matter of law on the merits of Count I, its claim that defendant breached the Mt. Zion Guaranty. Plaintiff's motion for judgment on the pleadings is granted as to Count I.

**B.     Count II: Mezzanine Guaranty**

In Count II, plaintiff asserts that defendant breached the Mezzanine Guaranty, which is governed by Ohio law.

Defendant admits that he executed the Mezzanine Guaranty. Section 2 of the Mezzanine Guaranty states, among other things, "Guarantor, absolutely and unconditionally, guarantees the prompt payment and performance when due of the Guaranteed Obligations." (Mezzanine Guaranty at 4). Section 3 of the Mezzanine Guaranty states, among other things, "Upon the occurrence of any Event of Default, the Bank may proceed against the undersigned Guarantor to collect the Guaranteed Obligations, with or without proceeding against the Borrower . . ." (Mezzanine Guaranty at 4). Defendant admits that when Mt. Zion filed a bankruptcy petition, it constituted a default with respect to Mezzanine Loan Agreement. Defendant admits that PNC made a demand for payment and that he did not pay. Accordingly, plaintiff has established that Djurin breached the Mezzanine Guaranty.

Defendant did not assert any affirmative defense with respect to the Mezzanine Guaranty. Accordingly, the Court concludes that PNC has established that it is entitled to judgment as a matter of law with respect to the merits of Count II. Plaintiff's motion for judgment on the pleadings is granted as to Count II.

**C.     Count III: Colts Run Guaranty**

In Count III, plaintiff asserts that defendant breached the Colts Run Guaranty, which is governed by Illinois law.

Defendant admits that he executed the Colts Run Guaranty. Section 2.1 of the Colts Run Guaranty states, among other things, "Guarantor unconditionally, absolutely, continuingly and irrevocably guaranties to Lender, Borrower's prompt payment, in full, when due or declared due, of Borrower's Liabilities . . ." (Colts Run Guaranty at 4). Section 2.2 of the Colts Run Guaranty states, among other things, "Lender is not required to (a) prosecute collection, or seek to enforce or resort to any remedies against Borrower or any other party liable to Lender on account of Borrower's Liabilities, Borrower's Obligations or any guaranty thereof . . ." (Colts Run Guaranty at 4). Defendant admits that when Colts Run filed a bankruptcy petition, it constituted a default with respect to Colts Run Loan. Defendant admits that PNC made a demand for payment and that he did not pay. Accordingly, plaintiff has established that Djurin breached the Colts Run Guaranty.

In his answer, defendant asserted the same two affirmative defenses with respect to the Colts Run Guaranty that he had asserted with respect to the Mt. Zion Guaranty. Djurin's first affirmative defense is that his liability under the Colts Run Guaranty should be reduced by any amounts paid on the Colts Run Loan as part of the bankruptcy proceeding. Djurin does not address this affirmative defense in his brief. As was true of the Mt. Zion Guaranty, the Colts Run Guaranty states that, "only payments made to Lender by Guarantor from or with personal funds not derived from the Property after demand therefor by Lender shall be applied against such liability." (Colts Run Guaranty at 14). The Court agrees with plaintiff that the first affirmative defense fails as a matter of law in the face of this language in the Colts Run Guaranty.

Next, defendant asserts his second affirmative defense, that plaintiff cannot enforce the Colts Run Guaranty without establishing that it is a person entitled to enforce the Colts Run Loan. As the Court explained above, however, the statute upon which defendant relies for this defense does not apply to guaranty agreements, because a guaranty is not a negotiable instrument for purposes of the statute. Defendant's second affirmative defense fails as a matter of law.

For these reasons, plaintiff has established that it is entitled to judgment as a matter of law on the merits of Count III, its claim that Djurin breached the Colts Run Guaranty. Plaintiff's motion for judgment on the pleadings is granted as to Count III.

## IV. Conclusion

For the reasons set forth above, the Court grants plaintiff's motion for judgment on the pleadings with respect to the merits of Counts I, II and III. Plaintiff has not proven damages. This case is set for status hearing on August 30, 2011 at 11:00 a.m.

                ENTER:

                *George M. Marovich*

                George M. Marovich
                United States District Judge

DATED: August 16, 2011